474 So.2d 401 (1985)
Linda Irene LEONE F/K/a Linda Irene Weed, Appellant,
v.
Thomas John WEED, Appellee.
No. 83-2784.
District Court of Appeal of Florida, Fourth District.
August 21, 1985.
*402 James Fox Miller of Miller and Schwartz, P.A., Hollywood, for appellant.
Terrence P. O'Connor of Morgan, Carratt and O'Connor, P.A., Fort Lauderdale, for appellee.
HURLEY, Judge.
The former wife appeals an order of the trial court denying her motion for contempt and granting the former husband's motion for modification of child support. We reverse.
The parties' marriage was dissolved in January of 1974. The final judgment incorporated by reference a property settlement agreement, which contained provisions concerning a wide variety of topics, including alimony and both child custody and support. According to the agreement, the wife received custody of the minor daughter, who was three years old at the time. The husband agreed to pay $200 per month beginning on December 1, 1973 and, on December 1, 1975, would increase the payments to $350. These payments were to continue until the daughter reached 18 years of age, married or became self-supporting. With respect to the husband's alimony obligations, he agreed to pay $350 per month commencing December 1, 1973 and ending on January 1, 1983, or until the wife died or remarried, whichever occurred first. Finally, the husband agreed to be responsible for medical and dental expenses of their child as long as he was otherwise obligated to support the child pursuant to the agreement. He also agreed to carry a life insurance policy in the amount of $50,000, with the wife as beneficiary, until his child support obligations terminated.
In May of 1981 a general master, acting upon a request by the husband to decrease his obligations, and an opposing request by the wife to increase them, raised the required child support payments from $350 to $650 per month. The former husband subsequently filed exceptions to the general master's recommendations in the trial court but to no avail  the court not only affirmed the master's findings, it also boosted the child support payments an additional fifty dollars to $700 per month.
In March of 1983, almost two years later and after the alimony obligations had terminated, the former husband, a physician, filed a motion seeking modification of child support. He stated that he was no longer practicing medicine and that he was without income. He further stated that he had been forced to resign from his medical practice. The former wife responded by filing two separate motions. First, she responded generally to the allegations regarding the husband's inability to pay. Second, she requested that the husband be held in contempt and, in support of this, she detailed the husband's failure to comply with previous orders of the court. Her motion alleged that the former husband was behind in his child support payments; that he had failed to maintain the life insurance policy; and that he had not satisfied his obligations concerning medical care for the child. Both motions were filed approximately two months after the husband's, and several months before the November, 1983 hearing. By the time of the hearing, the situation had worsened. The former husband was then almost $9,000 in arrears.
On November 17, 1983, a hearing was held on the parties' motions. The court heard testimony from both parties, the wife's attorney, and from a woman who was about to marry the former husband. *403 The testimony predictably focused on the former husband's debts, assets and earning potential. Subsequent to the hearing, the court issued an order providing as follows:
1. It having been clearly established that Respondent [former husband] is not in deliberate violation of previous Court Orders, Petitioner's Motion for Contempt is denied.
2. It having also been clearly established that Respondent does not have the present ability, but does have the future capacity to contribute to the support of the child of the parties, his Motion for Modification is granted, as follows:
A) Commencing January 1, 1984, Respondent's obligation for support of his daughter shall be reduced to the sum of $400.00 per month. Of that sum, Respondent shall pay the sum of $200.00 cash on the first day of each month, for 12 consecutive months. The other $200.00 of the $400.00 per month obligation shall accrue, and shall be included in the Judgment referred to in Paragraph C below.
B) Commencing January 1, 1985, Respondent shall pay the sum of $400.00 per month as support for his child, such payment to continue until said child attains majority, becomes self-supporting, or further Order of this Court.
C) Respondent's support obligations for the months of April through December 1983 (nine months at $700 per month  $8,200.00), together with $608.56, medical and dental expenses paid by Wife, and the $2,400.00 described in Paragraph A, above, all totaling $11,208.56, shall be paid by Respondent in 12 consecutive equal monthly installments of $934.05 each, commencing on the first day of the month following the termination of child support, as described in Paragraph B, above.
D) Respondent's other obligation per Judgment of Dissolution of Marriage, dated January 9, 1974, shall remain unchanged, (except only the obligation concerning life insurance on which the Court declines to rule).
E) The question of an award of attorney's fees and costs to either party is deferred to later hearing on Motion.
We first address the former wife's contention that the trial court erred in failing to find the former husband in contempt based on his non-compliance with the final judgment of dissolution and property settlement agreement. The Florida Supreme Court, in Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976) established the definitive standard by which the propriety of a contempt finding is to be judged:
[A] trial judge must make an affirmative finding that either (1) the petitioner presently has the ability to comply with the order and willfully refuses to do so, or (2) that the petitioner previously had the ability to comply, but divested himself of that ability through his fault or neglect designed to frustrate the intent and purpose of the order.
Faircloth, 339 So.2d at 651. See also, Bowen v. Bowen, 454 So.2d 565 (Fla. 2d DCA 1984); Waskin v. Waskin, 452 So.2d 999 (Fla. 3d DCA 1984); see generally, Comment, The Nonsupport Contempt Hearing: A Survey of Florida Law, 12 Fla.St.U.L.Rev. 117 (1984). The record in this case contains substantial evidence that the former husband previously had the ability to pay but that he, of his own volition, divested himself of that ability. He left a position with a salary of $85,000, merely because of a dispute with his partners. Subsequently, he moved from job to job until he found work available. At the time of the November, 1983 hearing, the former husband's current position paid approximately $40,000. This scenario depicts the second prong of the Faircloth test, i.e., a voluntary relinquishment of employment. Moreover, the former husband did not take this action to better his income-earning potential. Rather, he terminated his employment without regard to the consequences. Thus, by his own act, he placed himself in financial straits. Consequently, he cannot *404 use these self-induced difficulties to avoid his obligation to support his daughter. Accordingly, we hold that the trial court erred in declining to find the former husband in contempt. We further note that although the former husband experienced a reduction in income, he terminated child support. In our view, even the reduced salary of $40,000 would have permitted the former husband to fulfill his parental support obligation.
Next, the former wife asserts that the lower court erred in ordering a reduction in the former husband's child support payments and in further approving a lengthy delay in repayment of the substantial arrearages. Again, we agree. The former husband had a heavy burden to justify a request for modification of support. The appropriate standard was articulated in Burdack v. Burdack, 371 So.2d 528 (Fla. 2d DCA 1979):
A fundamental prerequisite to modification of child support payments is a showing of substantial change of circumstances, including financial circumstances, of one or both of the parties. Brown v. Brown, 315 So.2d 15 (Fla. 3d DCA 1975). This change in circumstances must be significant, material, involuntary and permanent in nature. In re Marriage of Johnson, 352 So.2d 140 (Fla. 1st DCA 1977). The party seeking modification has the burden of showing this change in circumstances. Meltzer v. Meltzer, 356 So.2d 1263 (Fla. 3d DCA 1978). And where, as here, the amount of child support is based upon an agreement by the parties, a heavier burden rests upon the party seeking a modification than would otherwise be required. Scott v. Scott, 285 So.2d 423 (Fla. 2d DCA 1973).
Burdack, 371 So.2d at 529.
Here, the former husband failed to meet this burden; the change of circumstances asserted was insufficient to warrant modification. The former husband admitted that he left his previous position of his own free will after a dispute with his partners in the medical practice. Thus, the circumstances were not of an involuntary nature; nor were the reasons asserted of a permanent nature. Moreover, there is every indication in the record that the former husband can regain the financial position he recently occupied. Consequently, the court erred in granting the former husband's request for modification.
The court also erred in establishing a repayment plan which postpones repayment of the sizable support arrearages until the termination of child support. While the manner in which child support arrearages are to be repaid is a matter within the discretion of the trial court, Shellmyer v. Shellmyer, 418 So.2d 477 (Fla. 4th DCA 1982), the arrangement here constitutes an abuse of that discretion. A plan which postpones repayment of support until the object of such support reaches legal age or becomes self-supporting flies in the face of the very reasons for which "child support" exists. This child needs sustenance now, not a dowry in the future. Therefore, we hold that it was error to permit such an extended and delayed repayment schedule. The former husband should be required to make reasonable arrearage payments concurrent with his regular support payments. E.g., Butchart v. Butchart, 469 So.2d 965 (Fla. 4th DCA 1985). Moreover, the former husband should pay interest at the legal rate on the amount of the outstanding arrearages. Butchart v. Butchart, supra; see also Melvin v. Melvin, 391 So.2d 691 (Fla. 1st DCA 1980).
Finally, the trial court, without specifying the reason, declined to rule on the former wife's contention that the former husband failed to maintain a life insurance policy naming her as a beneficiary, in violation of the terms of the original property settlement agreement. The former wife asserts the trial court should have addressed this issue. We agree and, upon remand, direct the court to do so.
We therefore reverse and remand this case for further action consistent with this opinion. We have reviewed the remainder *405 of the former wife's allegations of error and find they are without merit.
REVERSED AND REMANDED.
GLICKSTEIN and BARKETT, JJ., concur.