SHARP, Chief Judge,
dissenting.
I respectfully dissent. This case involves the power of a trial judge to overrule fact findings made by a General Master to whom a support matter was referred, and secondarily, the more prosaic question of his power to do so without any additional evidence having been presented to him.
*1186 The record is very sparse. It commences with Cynthia Ross filing a petition against appellee, Peter Buttiglieri, in the Family Court of the State of New York, Oneida County, in June of 1987, to obtain support for her two children under New York’s Uniform Support of Dependents Law. It was actually filed on behalf of Ross by the Commissioner of the Oneida County Department of Social Services. The petition alleged that Buttiglieri is the father of Ross’ two children, ages two years and nine months, respectively, and that Ross and Buttiglieri were never married. Paragraph 4 of the petition alleged that Buttig-lieri is chargeable with the support for the two children. Paragraph 6, alleged that Ross and the two children have received $538.00 monthly support from New York State, and that they need support from Buttiglieri.
In connection with the petition, the Commissioner filed additional testimony from Ross reciting the supporting facts, which follow. Ross never paid any support for the children; the petition was being filed to establish paternity. In answer to question number 21, Ross stated she required $538.00 per month “for support for yourself and child(ren).” In question 30 and 31, Ross answered that she was currently receiving public aid of “$538.00 plus medical.”
Buttiglieri left the jurisdiction of New York prior to service of the New York summons. The family court judge found that Buttiglieri was believed to be residing in Ormond Beach, Florida. He also found that the dependents named in the petition for support (only the two children) needed the sum of $538.00 per month. This was based on the testimony and allegations in the petition. There after, the family court judge transmitted the petition to the circuit court of Volusia County to compel Buttigli-eri to respond.
The matter then entered its interstate posture. Pursuant to New York state’s Uniform Support of Dependents Law, (similar to but not exactly the same as Florida’s URESA[1]), support can be sought for dependent spouses and/or children of persons responsible for such support, who have left the state’s jurisdiction. Under this statute, Ross was not entitled to support from But-tiglieri, but the children were.
A URESA petition was filed in Volusia County in March 1988, by the Department of Health and Rehabilitative Services of Florida against Buttiglieri. It specifically sought support for the two minor children only. It asked that a finding of paternity be made and that appellee be required to pay child support.
The matter was referred to a General Master who filed a report dated April 6, 1988, with summary findings: appellee had two children; he was employed and earning approximately $400 to $500 per week. The General Master recommended that $538.00 be paid by Buttiglieri as support. Also, on April 6, 1988, the General Master entered an order of support pursuant to URESA consistent with his findings, and an income deduction order. After receipt of the funds, HRS was directed to forward the funds to the Support Collection Unit of Oneida County, New York.
Buttiglieri then filed a motion for rehearing and to set aside the General Master’s findings and order of support. It alleged that Buttiglieri had appeared before the General Master, but he had not been represented by an attorney. It alleged he had admitted paternity of the children. Furthermore, it alleged he had been unable to present to the General Master material facts which would have shown he lacked the ability to pay $538.00 per month.
In connection with this motion, Buttigli-eri filed a financial affidavit disclosing his gross income of $575.00 per week and net income of $500.00 per week. The $538.00 per month award for two dependent children is actually below the recommended child support guidelines under section 61.-30, Florida Statutes (1987).[2] The General *1187 Master denied Buttiglieri’s motion for rehearing.
On April 18, 1988, Buttiglieri filed with the circuit court judge his motion to set aside the General Master’s findings and order for support. This motion contained an additional reason why the support order should be set aside: Ross is “able-bodied and has a duty to support herself and the children and she apparently has chosen to be supported by welfare and the Respondent is being punished for her choice to do so.” The Florida guidelines automatically impute to a custodial parent a duty of support and adjustments are made to require both to support the children. § 61.30(2)(b), Fla.Stat. However, it is not a defense to one’s support duties to claim that the custodial parent is receiving aid to families with dependent children. Buttigli-eri concluded that he believed the monies ordered by the General Master included a sum for the support of Ross.
Without any further evidence being submitted or testimony being taken, the circuit court judge entered an order which reduced Buttiglieri’s support obligation to $400.00 per month. He found that the $538.00 previously ordered was not only for the support of the children, but also for Ross, who Buttiglieri has no obligation to support. This finding must be solely based on the record summarized above. I submit that there is an insufficient basis here to support the reduction.
Although some of the allegations in the New York petition could be read to create an issue as to whether the $538.00 per month sum was needed for Ross’ support as well as the children’s, this was a matter which should have been resolved by the General Master, at the evidentiary hearing level. Buttiglieri was present and could have raised this issue as a defense. Had he done so, the proper procedure under URESA would have been to refer the matter back to New York to determine Ross’ or New York State’s response. See § 88.193, Fla.Stat. In this kind of interstate law suit, the initiating party in another state cannot be sandbagged by the respondent in the forum state by raising a factual kind of defense such as this.
The reduction order appealed by HRS in this case is erroneous for three reasons. First, the factual issue, if raised, should have been resolved through a bifurcated interstate hearing procedure pursuant to URESA. See § 88.193, Fla.Stat. Second, this factual issue was or should have been resolved by the evidentiary hearing before the General Master, and the trial court should have been bound by it. In Reece v. Reece, 449 So.2d 1295 (Fla. 4th DCA 1984), this court said:
The findings of fact and conclusions therefrom [of a general master] may not be rejected by the trial court in the absence of clear error. To put it another way, the role of the trial court in reviewing the findings and determinations of the master are similar to those of the appellate court in reviewing a trial court’s findings and determinations, (cites omitted).
A master’s findings of fact are clothed with a presumption of correctness, and the trial court is bound by the general master’s factual findings when supported by competent evidence. Landis v. Landis, 486 So.2d 28 (Fla. 3d DCA 1986); Sitomer v. Sitomer, 397 So.2d 373 (Fla. 4th DCA 1981). Third, the record in this case, consisting only of the pleadings, (the General Master’s evidentiary hearing was not transcribed) supports the $538.00 award.
There is nothing in this record to support the trial judge’s conclusion that $138.00 of that sum was for Ross’ support, or that the children did not need the full amount. To support such a conclusion, some showing would have to be made that New York State’s $538.00 welfare payment included Ross’ support as well as the children’s, the amount allocated for Ross, and that the children only needed $400.00 per month from their father. Perhaps Ross and the children could claim New York should turn over $138.00 to them out of Buttiglieri’s $538.00 payment, so he would not be in any way reimbursing New York for support paid to Ross by that state for her own support. However, that is none of Buttigli- *1188 eri’s business and it rightfully should play no part in this law suit.

. See Ch. 88, Fla.Stat. (1987).

. Based on Buttiglieri’s affidavit as to gross income, net income, and imputing minimum wage income to Ross who is unemployed, the father’s child support share comes to $700.00 per month.