DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERT W. BAUCHMAN,**
Appellant,

v.

**BERTA BAUCHMAN,**
Appellee.

Nos. 4D17-35 & 17-1471

[August 15, 2018]

Consolidated appeals from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Robert L. Pegg, Judge; L.T. Case No. 312004DR050470FR01.

Amy D. Shield and Roger Levine of Shield & Levine, P.A., Boca Raton, for appellant.

Karen O'Brien Steger and Lori Steger of Steger & Steger, Stuart, for appellee.

KLINGENSMITH, J.

Robert W. Bauchman ("former husband") timely appeals a final judgment denying modification of alimony. He challenges the trial court's finding that former husband's impending retirement and the improved financial circumstances of Berta Bauchman ("former wife") did not constitute a substantial change of circumstances warranting modification. Additionally, he challenges the trial court's award of attorney's fees to former wife. We find merit as to former husband's claim that his voluntary retirement should have been considered by the trial court and his challenge to the trial court's award of attorney's fees. Therefore, we reverse.

In November of 2005, after twenty-seven years of marriage, the parties entered into an amended marital settlement agreement ("MSA"). The MSA required former husband to pay former wife $5,500 in monthly permanent periodic alimony. There was no provision in the MSA concerning the retirement of either spouse.

In 2015, former husband filed a supplemental petition for downward modification or termination of alimony. Former husband specifically alleged, among other things, that he was over the age of sixty-five and faced retirement in the near future. At trial, he testified that he continued to work for health insurance reasons due to his current wife's significant illness. Former husband also stated that he planned to retire in August 2017, when he reached sixty-eight years of age and both he and his current wife would be covered by Medicare. He recalled that his retirement was not contemplated at the time the MSA was entered. Former husband's forensic accountant, who participated in drafting the MSA, corroborated this testimony that was otherwise unrebutted.

Ultimately, the trial court denied former husband's petition for modification. In the order, the court correctly noted the three elements necessary to permit modification of alimony. *See Koski v. Koski*, 98 So. 3d 93, 95 (Fla. 4th DCA 2012). However, the court cited *Pimm v. Pimm*, 601 So. 2d 534 (Fla. 1992), for the purported proposition that "it must be proved that the change in circumstance was *not anticipated* by the parties at the time of the final judgement." (emphasis added). The court thus rejected former husband's argument, noting that former husband's income and net worth had substantially increased since 2005, and former husband would have the same ability to pay if he chose to retire. The order concluded, "As to the former husband's potential retirement, such a contingency was certainly no surprise to either party because of his age."

The trial court's order also found that former wife had a financial need for the alimony payments she was receiving, and former husband had the ability to pay. However, the record does not reflect any findings of fact as to former wife's continued "need" relating to her request that former husband pay her attorney's fees. The trial court addressed the skillfulness of the attorneys representing both parties, and after referencing *Rosen v. Rosen*, 696 So. 2d 697 (Fla. 1997), and the factors to be considered for an award of attorney's fees, the order provided that the "continued payment [of fees] by Mr. Bauchman would appear not to have much of an impact on his lifestyle." The order further provided that former wife "does not have the cash assets to employ an attorney comparable to the firm retained by the former husband."

I. Former Husband's Voluntary Retirement

The trial court has broad discretion to modify a former spouse's alimony obligation "as equity requires, with due regard to the changed circumstances . . . ." § 61.14(1)(a), Fla. Stat. (2017). However, the appellate court's standard of review of an order modifying alimony is

2

mixed.  *See Jarrard v. Jarrard,* 157 So. 3d 332, 337 (Fla. 2d DCA 2015).  The trial court's legal conclusions are reviewed de novo.  *See id.* at 337-38.  The trial court's factual findings are reviewed for abuse of discretion and should be affirmed if supported by competent, substantial evidence.  *See id.* at 337.  However, if the facts are undisputed, the judgment is reviewed de novo.  *See id.* at 337 n.5.

The difference between an error of law and an abuse of discretion is two-fold:

> An award of alimony will usually not be reversed on appeal absent an abuse of discretion.  *Canakaris v. Canakaris,* 382 So. 2d 1197 (Fla. 1980); *Green v. Green,* 228 So. 2d 112 (Fla. 3d DCA 1969).  However, "[w]here a trial judge fails to apply the correct legal rule… the action is erroneous as a matter of law."  *Kennedy v. Kennedy,* 622 So. 2d 1033, 1034 (Fla. 5th DCA 1993).

*Ondrejack v. Ondrejack,* 839 So. 2d 867, 870 (Fla. 4th DCA 2003).

"To warrant modification of alimony, the party seeking the change must prove '1) a substantial change in circumstances; 2) *that was not contemplated at the time of final judgment of dissolution*; and 3) is sufficient, material, involuntary, and permanent in nature.'"  *Koski,* 98 So. 3d at 95 (emphasis added) (quoting *Damiano v. Damiano,* 855 So. 2d 708, 710 (Fla. 4th DCA 2003)).

Silence as to retirement within an original judgment or agreement "should not preclude consideration of a reasonable retirement as part of the total circumstances in determining if sufficient changed circumstances exist to warrant a modification of alimony."  *Pimm,* 601 So. 2d at 537.  "Settlement agreements are to be interpreted in accordance with laws governing contracts.  Thus, absent evidence of the parties' intent to the contrary, the unambiguous language of the agreement should be interpreted according to its plain meaning."  *Dogoda v. Dogoda,* 233 So. 3d 484, 487-88 (Fla. 2d DCA 2017) (quoting *Johnson v. Johnson,* 848 So. 2d 1272, 1273 (Fla. 2d DCA 2003)).  "Consistent with notions of equity is the consideration of whether the parties contemplated the substantial change in circumstances *and* accounted for such change when they agreed on the terms of the support award."  *Dogoda,* 233 So. 3d at 487 (emphasis added).

"[I]t is well-established that an alimony award may not be modified because of a 'change' in the circumstances of the parties which was contemplated and considered when the original judgment or agreement

was entered." *Jaffee v. Jaffee*, 394 So. 2d 443, 445 (Fla. 3d DCA 1981). The reason for this doctrine is that "if the likelihood of a particular occurrence was one of the factors which the court or the parties considered in initially fixing the award in question, it would be grossly unfair subsequently to change the result simply because the anticipated event has come to pass." *Id.*

Over the years, however, courts have confused "anticipated" and "foreseeable" circumstances to mean that such circumstances were "contemplated and considered" at the time the original judgment was entered. *See Gelber v. Brydger*, 2018 WL 2715350 at *2 (Fla. 4th DCA June 6, 2018). "The word choice of 'anticipated' has been unfortunate because it has transformed a very different concept into something that it is not." *Id.*

In *Gelber*, the former husband sought a downward modification of alimony upon the former wife reaching fifty-nine-and-one-half years of age, thus allowing her to access her retirement accounts without penalty, which had appreciated significantly. *Id.* at *1. The trial court's amended final judgment found the former husband had demonstrated an "unanticipated" substantial change in the former wife's financial circumstances. *Id.* On appeal, the former wife argued the event was "foreseeable" and alimony may not be modified for "anticipated changes in circumstances." *Id.* at *2.

This court disagreed, holding that the second prong of the analysis "concerned matters that had been contemplated or considered in the past, in a judgment or agreement; it does not penalize a party for failing to raise a matter that had not yet happened." *Id.* at *3. Rather, "[i]n its refusal to reconsider something already 'contemplated and considered' by the parties or the court in a family case, the doctrine described by *Jaffee* is akin to the doctrines of res judicata or collateral estoppel." *Id.* at *2 (footnotes omitted).

Additionally, citing *Pimm*, this court noted that "the Florida Supreme Court did not employ an 'anticipated/foreseeability' analysis in deciding that a former spouse's retirement is a change of circumstances that may trigger a modification of alimony." *Gelber*, 2018 WL at *3. This court concluded that "[r]etirement is certainly something that can be 'anticipated' during a divorce. Yet the Supreme Court [in *Pimm*] focused not on what the parties should have anticipated but on what was actually considered in the property settlement agreement entered 13 years before the motion for modification." *Id.*

4

Here, the trial court employed the "anticipated/foreseeability" analysis to reason that retirement had been impliedly integrated into the MSA due to former husband's age at dissolution, and it cited *Pimm* to support this conclusion. But there is no discussion of "anticipated," "unanticipated," or "foreseeable" events in *Pimm*. *Pimm* focused on the reasonableness of a former spouse's voluntary retirement as a basis for modification and provided that while including a provision about retirement in an MSA or final judgement was preferable, it did not preclude a spouse from petitioning for modification for those reasons. *See Pimm*, 601 So. 2d at 536-37. Thus, the trial court's conclusion that the contingency of former husband's potential retirement "was certainly no surprise to either party because of his age" directly conflicts with *Pimm*.

We find the trial court erred in failing to consider former husband's impending retirement as a substantial change in circumstances, as no evidence was presented to show the parties considered former husband's future retirement when the MSA was entered. We therefore reverse the final order and remand this matter to the trial court for further proceedings on this issue.

II. Award of Attorney's Fees to Former Wife

An award of attorney's fees stemming from a dissolution proceeding is reviewed for abuse of discretion. *See Breckstrom v. Breckstrom*, 183 So. 3d 1067, 1068 (Fla. 4th DCA 2015).

A court's determination of an appropriate attorney's fee award is governed by section 61.16(1), Florida Statutes (2017), which requires the trial court to consider and evaluate each party's financial resources in deciding whether, and to what extent, to award attorney's fees. To accomplish this goal, the "trial court must look to each spouse's need for suit money versus each spouse's respective ability to pay." *Rosen*, 696 So. 2d at 699. The respective financial resources of each party constitute "the primary factor to be considered." *Id.* at 700; *accord Jacoby v. Jacoby*, 763 So. 2d 410, 417 (Fla. 2d DCA 2000). "The party seeking fees has the burden of proving the reasonableness and the necessity of the fee sought." *Addie v. Coale*, 120 So. 3d 44, 48 (Fla. 4th DCA 2013).

"By the vague, general requirement that a court 'consider the financial resources of both parties,' the statute has vested broad discretion in the courts to develop a body of law shaping the considerations relevant to an award of Chapter 61 attorney's fees and costs." *Von Baillou v. Von Baillou*, 959 So. 2d 821, 823 (Fla. 4th DCA 2007) (quoting § 61.16(1), Fla. Stat. (2006)).

"[T]he party seeking relief must show some need; it is not enough to simply show that the adverse party's ability to pay the fees is greater than the party seeking relief or that an award is based on the relative financial strain of paying attorney's fees." *Carlson v. Carlson*, 719 So. 2d 936, 936 (Fla. 4th DCA 1998); *accord Zahringer v. Zahringer*, 813 So. 2d 181, 182 (Fla. 4th DCA 2002). "'Need' is 'the necessity for some financial assistance to engage an attorney and pay attorney fees.'" *Von Baillou*, 959 So. 2d at 823 (quoting *Satter v. Satter*, 709 So. 2d 617, 618-19 (Fla. 4th DCA 1998)). "If one party has no financial need for fees, the other party cannot be compelled to pay them solely because his or her sizeable assets minimize the financial strain of such a payment." *Id.* Moreover, "where the parties to a dissolution are equally able to pay attorney's fees, it is an abuse of the court's discretion to require one spouse to pay the other's attorney's fees." *Vitalis v. Vitalis*, 799 So. 2d 1127, 1133 (Fla. 5th DCA 2001).

Here, the record shows that former wife had substantially the same ability to pay her attorney as did former husband. In rendering its decision, the trial court misconstrued former wife's "need" regarding attorney's fees, implying either that she was financially unable to pay her attorney's fees, or that she needed payment from former husband to retain an attorney of equal caliber to the one he retained. Neither was true. While former wife was fortunate to have found an attorney of the same caliber as former husband's attorney, this factor is not a basis for an award of attorney's fees. When considering a party's financial need for funds to secure competent legal counsel, neither the statute nor caselaw require that both parties have legal counsel of equal experience or ability; nor is an impecunious spouse entitled to retain legal counsel charging fees comparable to those of the attorney retained by the other spouse. The purpose of a fee award in a dissolution action is to "ensure that both parties . . . have *similar access* to counsel and that neither has an *unfair ability to obtain legal assistance* because of the other's financial advantage." *Young v. Young*, 898 So. 2d 1076, 1077 (Fla. 3d DCA 2005) (emphases added).

Because the parties' financial positions here were equalized through the original settlement agreement's award of alimony and equitable distribution of marital assets, and because former wife possessed substantial non-marital assets, we conclude that the award of attorney's fees to former wife was improper. The record does not indicate that she had any difficulty securing access to competent legal representation. Former wife currently receives $66,000 per year in alimony from her former husband, holds over $600,000 in cash assets and has a net worth of over $2.6 million. From these facts, there is nothing in the record to

suggest that former wife could not afford to pay her own attorney's fees. *Von Baillou*, 959 So. 2d at 824-25. The evidence revealed that she possessed an ability equal to that of former husband to pay her attorney's fees and costs. *See Lopez v. Lopez*, 780 So. 2d 164, 166 (Fla. 2d DCA 2001). Having the former wife pay her own attorney's fees would only impose a limited degree of financial strain insufficient to rise to a level that satisfies the "need" requirement. *See Von Baillou*, 959 So. 2d at 825. Absent any factual findings supporting former wife's need for attorney's fees, we can only conclude that the trial court committed error. *Zahringer*, 813 So. 2d at 182.

We reverse the trial court's order awarding attorney's fees and costs to former wife, with directions that the trial court order that the parties pay their own attorney's fees and costs.

*Reversed and remanded for further proceedings.*

DAMOORGIAN and FORST, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

7